# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No.  06-298 (GK) |
| v | : | |
| | : | Motions Hearing:    February 9, 2007 |
| SAMUEL H. VINTON, JR. | : | |
| | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
## TO SUPPRESS EVIDENCE AND MOTION TO SUPPRESS STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion to Suppress Tangible Evidence and Motion to Suppress Statements.  As grounds for this Opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing on the Motions:

## FACTUAL BACKGROUND

On September 9, 2006, at approximately 9:08 p.m., United States Park Police Officer William Alton was on patrol in a cruiser in the 3300 block of F Street, Southeast, Washington, D.C. when he saw the Defendant, Samuel Vinton, driving a car with heavily tinted windows.  Officer Alton conducted a traffic stop of the Defendant because of the excessive tint on the Defendant's car windows.  As Officer Alton approached the Defendant's car, he noticed that there was a "thin blue line" sticker on the trunk of the Defendant's car, which is often used to indicate that the owner or operator of a vehicle is a law enforcement officer.  Before Officer Alton reached the Defendant's driver's side window, the Defendant had rolled down all of the car windows.

When Officer Alton reached the driver's side door, he identified himself, told the Defendant why he had stopped him, and asked the Defendant for his driver's license and registration.  As

Officer Alton spoke to the Defendant, he noticed a large knife with a wooden handle that was lying on the back seat in the Defendant's car.  The entire knife was approximately 10 inches long, with a blade that was five inches long, and the blade of the knife was covered by a sheath.  Officer Alton, who was concerned about his safety, placed the knife on the roof of the Defendant's car, and asked the Defendant about the knife.  The Defendant told Officer Alton that the knife belonged to his grandfather and that the Defendant and his grandfather use the knife to fillet fish when they go fishing.  Officer Alton did not see any fishing gear or equipment in the Defendant's car.

Officer Alton tested the tint on the Defendant's window, and the results of the test indicated that the tint was excessive, and in violation of the District of Columbia Code.  Officer Alton went back to his cruiser in order to issue a warning notice to the Defendant for the excessive window tint. As Officer Alton began to write the warning notice, a Metropolitan Police Department ("MPD") Officer who was driving by stopped and spoke to Officer Alton.  As the two officers talked, the MPD Officer informed Officer Alton that there had been a recent homicide in the area, and that the homicide resulted from a stabbing with a knife.  The MPD officer indicated that the homicide had occurred that same day, it had occurred near the Defendant's home and where the Defendant had been stopped, and that the Defendant may be a person of interest in that homicide investigation. Officer Alton walked back to the Defendant's car.

Officer Alton asked the Defendant what his occupation was, and the Defendant indicated that he worked in the private, personal security field.  Officer Alton then asked the Defendant whether there were any other weapons in the car, and the Defendant replied, "no, I keep all that stuff at home." Officer Alton removed the Defendant from the car and told the Defendant that he was going to search the car for weapons, and the Defendant said, "that's fine."  Then, Officer Alton asked the

2

Defendant again whether there were any other weapons in the car, and this time the Defendant said, "not that I know of." Officer Alton handcuffed the Defendant, but explained to the Defendant that the Defendant was not under arrest. Then Officer Alton frisked the car, and found a butterfly knife underneath the mat on the passenger side floor board, with a blade that was approximately three-and-one-half inches long, as well as two cans of mace in the center console. Additionally, Officer Alton found a locked briefcase, and a bag of ear foamies on the back seat of the Defendant's car. Officer Alton recognized the ear foamies as the type commonly used to protect one's ears at a firing range. Officer Alton asked the Defendant about the ear foamies, and the Defendant said he used them for sleep aides. Officer Alton also asked the Defendant what was in the black briefcase, and the Defendant said that the briefcase did not belong to him, and that he had no idea what was inside of it.

Thereafter, Officer Alton arrested the Defendant for possession of the 10 inch knife and the butterfly knife. Following the Defendant's arrest, Officer Alton forced open the locked briefcase and found a .45 caliber semiautomatic handgun inside. The gun was cocked with one round in the chamber and seven rounds in the magazine. The briefcase also contained 25 more rounds of .45 caliber ammunition, brass knuckles, a double-edged fighting knife, two pill bottles, and several plastic bags that contained a total of 243 blue and yellow tablets, which appeared to be ecstacy. A field test was performed and the tablets yielded a positive reaction for the presence of "MDMA," the active ingredient in Ecstacy.

The Defendant now moves to suppress the tangible evidence, and his statements. Defendant's motion is without merit and should be denied.

## ARGUMENT

I.    Officer Alton Lawfully Stopped The Defendant and Conducted a Protective Search of the Defendant's Car

Officer Alton lawfully stopped the Defendant because the officer had a reasonable articulable suspicion that the Defendant had committed a traffic violation.  Specifically, Officer Alton saw the Defendant driving a car with heavily tinted windows, and the tint appeared to be darker than the level of tint permissible under District of Columbia law.[1]  Thus, Officer Alton had reason to believe that the Defendant had committed a traffic violation.  Officer Alton's observation provided him with grounds to stop the Defendant and to investigate whether a traffic violation had in fact occurred.  See United States v. Mitchell, 951 F.2d 1291, 1295 (D.C. Cir. 1991) ("The Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one."); see also Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) ("there is no question about the propriety of" stopping a car for a traffic violation); Delaware v. Prouse, 440 U.S. 648, 659 (1979) ("The foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations.  Vehicle stops for traffic violations occur countless times each day; and on those occasions licenses and registration papers are subject to inspection . . . ."); United States v. Montgomery, 561 F.2d 875, 879 (D.C. Cir. 1977) ("The police may stop and question the driver of a vehicle when an infraction of the motor vehicle code is seen or suspected.").  Moreover, Officer Alton's reasonable articulable suspicion also gave him the authority to order the Defendant out of his car.  See Maryland v. Wilson, 519 U.S. 408 (1997);

---

[1]    D.C. Code Section 50-2207.02(a)(1)(A) provides, in relevant part, that "no motor vehicle may be operated or parked upon the public streets or spaces of the District of Columbia with . . . a front windshield or front side windows that allow less than 70% light transmittance."

4

Mimms, 434 U.S. at 111.

Officer Alton was justified in conducting a protective search of the Defendant's car during which the butterfly knife under the passenger mat and the two cans of mace in the center console were recovered. See Michigan v. Long, 463 U.S. 1032 (1983) (holding that protective search of passenger compartment of vehicle during lawful investigatory stop was reasonable). Having seen the large knife in plain view lying on the back seat of the Defendant's car, Officer Alton had a reasonable belief that there may have been other weapons in the Defendant's car. See United States v. Abdul-Saboor, 85 F.3d 664, 670 (D.C. Cir. 1996) (the presence of one weapon may justify concern that other weapons are in the vicinity). Consequently, Officer Alton had reason to believe that the Defendant was armed and dangerous, and might gain immediate control of additional weapons. See United States v. Christian, 187 F.3d 663 (D.C. Cir. 1999) (holding that officer who saw dagger inside car defendant was standing next to had reasonable fear that justified protective search of car), cert. denied, 529 U.S. 1030 (2000). Thus, the frisk of the Defendant's car was objectively reasonable, and the recovery of the butterfly knife and the cans of mace was lawful. Id. at 669-671.

II.    The Search of The Briefcase Did Not Violate The Defendant's Fourth Amendment Rights

First, the Defendant lacks standing to challenge the search of the briefcase because he disclaimed ownership of and therefore had no privacy interest in the briefcase. See United States v. Mangum, 100 F.3d 164 (D.C. Cir. 1996). In the course of an investigatory stop and prior to being arrested, Officer Alton removed a briefcase from the back seat of the Defendant's car, and when asked about the briefcase, the Defendant expressly denied ownership of it and claimed that he did

5

not know what was inside of it.  Because the Defendant denied ownership of the briefcase, he abandoned his property and waived any legitimate privacy interest in it.  Thus, appellant lacks standing to now challenge the search of the briefcase.

At any rate, Officer Alton had probable cause to arrest the Defendant, and thus the search of the briefcase was a lawful search incident to arrest.  Here, the police had probable cause to arrest the Defendant for carrying a dangerous weapon ("CDW"), in violation of D.C. Code Section 22-4504(a).[2]  To prove that a defendant committed the offense of CDW, the government must show that the defendant: "(1) carried on or about his person in an open or concealed manner a dangerous weapon capable of being so concealed, (2) intended to do the acts constituting carrying the weapon, and (3) intended to use the object as a dangerous weapon."  Monroe v. United States, 598 A.2d 439, 440 (D.C. 1991) (citation omitted).  There is no requirement that a defendant evidence a specific intent to use the weapon for an unlawful purpose.  Id.; see also Mackey v. United States, 451 A.2d 887, 889 (D.C. 1982) (in prosecution for carrying a concealed or dangerous weapon, "the only required proof [of intent] is an intent to do the proscribed act").  Here, the police had probable cause to believe that appellant had committed the offense of CDW because (1) the knives - the large knife

---

[2]        The government notes that the police did not have probable cause to arrest the Defendant for possession of a prohibited weapon ("PPW(b)").  See Christian, 187 F.3d at 666-67.  However, that fact is immaterial.  Although the police charged the Defendant with PPW(b), and not CDW, that error does not affect the legality of the arrest.  See Devenpeck v. Alford, 543 U.S. 146 (2004) ("an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause . . . . That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); see also United States v. Prandy-Binett, 995 F.2d 1069, 1073 (D.C. Cir. 1993) ("It is simply not the law that officers must be aware of the specific crime an individual is likely committing.  It is enough that they have probable cause to believe the defendant has committed one or the other of several offenses, even though they cannot be sure which one."), cert. denied, 510 U.S. 1167 (1994).  Thus, Officer Alton's decision to charge PPW(b) is irrelevant to the Fourth Amendment analysis because the known facts supported the Defendant's arrest for CDW.

and the butterfly knife - were in close proximity to the Defendant, and thus the knives were "on or about" the Defendant's person; (2) the proximity and accessibility of the knives to the Defendant allowed the police to infer that the Defendant intentionally had the knives "on or about" his person; and (3) the police could have reasonable concluded that the only reason for carrying a large knife with a five-inch blade, and a butterfly knife with a three-inch blade late at night would be as a weapon. See Monroe, 598 A.2d at 440-41 (surrounding circumstances, design of knife, and time and place of possession are among factors to be considered in determining whether knife is dangerous weapon). In addition to the design of the knives and the time and place of the possession of the knives, the Defendant's statements provided the police with further reason to believe that the Defendant had no legitimate reason to carry the knives. Specifically, the Defendant indicated that he was employed in the private, personal security field, and when Officer Alton asked if the Defendant had other weapons in the car, the Defendant said, "no, I keep all that stuff at home." Additionally, although the Defendant claimed that the large knife was used for fishing with his grandfather, Officer Alton did not see any fishing gear or equipment in the Defendant's car. Based on all of these factors, the police reasonable concluded that the knives were inherently weapons which the Defendant intended to use as weapons. Thus, the police were justified in arresting the Defendant, and in searching the briefcase thereafter.

III.    The Defendant's Statements Are Admissible Against Him

The Defendant was not in custody when he made statements to Officer Alton. Rather, he was subjected to a stop while the police conducted an on-the-scene investigation consistent with Terry v. Ohio, 392 U.S. 1 (1968). Officer Alton was permitted to ask investigatory questions during the stop. See Mitchell v. United States, 746 A.2d 877, 890 (D.C. 2000) ("The Supreme Court has held

7

that for Fifth Amendment purposes, ordinary traffic stops are like <u>Terry</u> stops -- though significantly curtail[ing] the freedom of action of the driver, they do not constitute custody requiring <u>Miranda</u> warnings prior to moderate questioning of the detainee.") (citing <u>Berkemer v. McCarty</u>, 468 U.S. 420, 436-37 (1984)) (internal quotation marks omitted).  Here, the Defendant was not "subjected to restraints comparable to those associated with a formal arrest."  <u>See</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 441 (1984).[3]   Moreover, the Defendant's statements were voluntary.  There is no evidence to suggest that the circumstances of the Defendant's stop were particularly intrusive.  The Defendant's contact with the police took place on a public street, there were only two officers present, and the Defendant was never physically threatened.  Accordingly, the Defendant's statements were not unlawfully obtained.

---

[3]      Although the Defendant was handcuffed after he was removed from the car, and at the point when he claimed that he used the ear foamies for sleep aides and when he denied ownership of the bag, Officer Alton had expressly told the Defendant that he was not under arrest.  <u>See</u> <u>Resper v. United States</u>, 793 A.2d 450, 454 (D.C. 2002) (defendant not in custody, even when he was frisked and driven to the station in a police car, where the officer advised him that he was not under arrest).

## <u>CONCLUSION</u>

WHEREFORE, the United States respectfully submits that Defendant's Motion to Suppress Evidence

and Motion to Suppress Statements should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

PRECIOUS MURCHISON
Assistant United States Attorney
Maryland Bar
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 307-6080

9