UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Criminal No. 06-298 (GK) |
| SAMUEL VINTON, | : |
| Defendant. | : |

FILED
FEB 12 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEMORANDUM OPINION**

There are four motions pending before the court. Upon consideration of the Motions, Oppositions, Replies, evidence taken in open court on February 9, 2007, and the applicable case law, the Court concludes that Defendant's Motions to Suppress Tangible Evidence and Suppress Statements shall be **denied**, the Government's Motion to Impeach the Defendant with Prior Bad Acts shall be **granted**, and the Government's Motion in Limine to Admit Fed. R. Evid. 404(b) Testimony shall be **denied**, for the following reasons. The Court has already issued, and hereby incorporates herein, the Findings of Fact made in open court on February 9, 2007.

I.  **DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE**

1.  Officer Alton's stop of the Defendant was a valid Terry stop. The Findings of Fact set forth in open court, establish that when Officer Alton pulled the Defendant over, he had a reasonable, articulable suspicion that the Defendant had committed two traffic violations, namely, illegal overtinting of his car windows under District of Columbia law, and driving above the speed limit in the District of Columbia. Terry v. Ohio, 391 U.S. 1, 30 (1968).

2. Upon stopping Defendant's car for an investigatory purpose and questioning him, Officer Alton saw a sheathed knife in plain view and easily accessible to the Defendant, in the middle of the back set of Defendant's car. Under Terry, the Officer was then fully authorized to make a protective search for weapons to ensure his personal safety. See United States v. Christian, 187 F.3d 663, 666 (D.C. Cir. 1999). In this instance, Officer Alton removed the knife from the back seat and placed it on top of the roof of the car.

3. Up until MPD Officer Hogue arrived on the scene, Officer Alton had no more than a reasonable, articulable suspicion that the Defendant had committed traffic violations. As he credibly testified, up until that point, he had no suspicion that the Defendant had committed a criminal act and no intention of arresting him.

4. With the arrival of Officer Hogue, the situation changed. To begin with, Officer Hogue informed Officer Alton that a double homicide, committed by stabbing, had occurred in the near vicinity only 20 hours earlier. Moreover, it had occurred in the vicinity of Defendant's residence, as shown on his driver's license. With this information, Officer Alton viewed the situation with more concern, caution, and suspicion.

5. After learning these facts, Officer Alton went back to the car, had the Defendant step out, and completed his protective search to ensure that no other weapons were available to the Defendant. That search yielded two cans of mace in the front seat arm rest and a knife under the front passenger floor board. Because the Defendant had previously told Officer Alton that there were no weapons in the car, the officer's suspicions were further heightened by the inconsistencies between what the Defendant had told him and what he actually found. In short, Officer Alton believed the Defendant had lied to him.

6.  During the search of the car, Officer Alton found a bag of earphones, which, in his experience, are often used on a firing range and in the military. The reason Defendant gave for having them, to help him sleep, only raised Officer Alton's suspicions higher.

7.  Officer Alton had seen a black briefcase in plain view in the back seat of the car. Given the accumulating grounds for suspicion -- namely, the fact of two fatal stabbings in the vicinity of the stop and the Defendant's address within a relatively short period of time, the discovery of an additional knife in the car when the Defendant had said there were no weapons, and the questionable explanation for the presence of earphones -- Officer Alton felt that it was essential to search the brief case because he strongly suspected that it contained contraband. He was informed by Investigator Hodge of the Park Police and a supervisor to which either he or Hodge spoke, that the brief case could be searched only if the Defendant was formally placed under arrest.

8.  Consequently, Officer Alton arrested the Defendant for possession of a prohibited weapon ("PPW"), forced open the briefcase, and then found ecstacy pills, a third knife, and a 45-caliber gun which was loaded and cocked.

9.  By the time Officer Alton actually placed the Defendant under arrest, approximately one hour after the initial Terry stop to investigate possible traffic violations, facts had accumulated which turned a legal Terry stop into an equally legal full-blown arrest based on probable cause.[1]

---

[1] It is true that Officer Alton did not make the decision to arrest the Defendant until he learned that he could not search the briefcase unless the Defendant was under arrest. However, "an arresting officer's state of mind (except for facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (internal citations omitted).

10. The Government concedes there was not probable cause for PPW, because the law is well established that mere possession of the knife that was seized in plain view from the back seat of the car is not sufficient to constitute possession of a prohibited weapon. There must be evidence of specific intent to use the weapon unlawfully against another, and there was no such evidence in this case. United States v. Christian, 187 F.3d 663, 667 (D.C. Cir. 1999); Jones v. United States, 401 A.2d 473, 475 (D.C. 1979).

11. However, the Government argues that there was probable cause to arrest for CDW because the elements of that differ significantly from the elements of PPW. As to CDW, "the government must prove beyond a reasonable doubt that the defendant carried either openly or in a concealed manner any deadly or dangerous weapon, that he had the intent to do the acts constituting the carrying of such dangerous weapon, and that his purpose in carrying the instrument was its use as a dangerous weapon." In re S.P., Jr., 465 A.2d 823, 826 (D.C. 1983). "The government is not required to show a defendant's specific intent to use the instrument unlawfully." Id. See also United States v. Broadie, 452 F.3d 875, 881 (D.C. Cir. 2006).

12. In this case, based upon all the facts and circumstances known to Officer Alton at the time of the arrest, there was probable cause to arrest the Defendant for carrying a dangerous weapon in violation of 22 D.C. Code 3204.[2] See Broadie, id. and Scott v. United States, 243 A.2d 54, 56 (D.C. 1968).

---

[2] The fact that Officer Alton arrested the Defendant for PPW rather than CDW is of no moment. The Constitution requires that an officer have probable cause to believe that a crime was committed before he makes an arrest. "It is simply not the law that officers must be aware of the specific crime an individual is likely committing. It is enough that they have probable cause to believe the defendant has committed one or the other of several offenses, even though they cannot be sure which one." United States v. Prandy-Binett, 995 F.2d 1069, 1073 (D.C. Cir. 1993), cert. denied, 510 U.S. 1167 (1994) (emphasis in original) (internal citations omitted).

13. Consequently, the search of the locked briefcase was a lawful and valid search incident to the arrest, and for that reason, the Motion to Suppress must be **granted**.

## II. DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

14. The Defendant seeks to suppress all of the statements listed in his Motion on the grounds that they were custodial statements for which he had not been given his Miranda rights. The Defendant is wrong. All of the statements listed in his Motion were made prior to the custodial arrest. Some of the statements were made prior to his initial handcuffing, when Officer Alton assured him that he was only detained and not arrested, and some of the statements were made between the time of that initial detention and the time when he was formally placed under arrest prior to searching the briefcase. None of the statements were made after his formal arrest. Officer Alton's testimony was very clear that while the Defendant had been cordial and talkative during the earlier part of the encounter, once he was handcuffed, he "clammed up" and there was very little further conversation.

15. Therefore, Defendant's Motion to Suppress Statements must be **denied**.

## III. GOVERNMENT'S MOTION TO IMPEACH DEFENDANT WITH PRIOR BAD ACTS

16. Defendant has filed no opposition and it will be deemed conceded. Moreover, on the merits, it is clear that the Government has a right to cross-examine the Defendant for purposes of impeachment, should he testify, with evidence of his prior Maryland conviction in 2000 for concealment of a deadly weapon. Fed. R. Evid. 609.

## IV. GOVERNMENT'S MOTION TO ADMIT RULE 404(b) EVIDENCE

17. The Government seeks to introduce the facts and circumstances surrounding the Defendant's prior arrest and conviction for an incident which occurred on August 30, 1999, at approximately 3:45 a.m. The Government claims that it seeks to introduce this evidence in order to prove knowledge, intent, and absence of mistake.

18. The law on Rule 404(b) evidence is well established in this Circuit. It is a rule of inclusion rather than exclusion, and allows the admission of evidence as long as it is offered only for relevant purposes, such as motive, opportunity, intent, preparation, plan, knowledge, identification, or absence of mistake or accident. The one and only purpose for which such evidence may never be admitted is to show a person's character, or to show that her actions conformed to her character. See United States v. Lawson, 410 F.3d 735, 741 (D.C. Cir. 2005); United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000); United States v. Long, 328 F.3d 655, 661 (D.C. Cir. 1993).

19. The evidence in question relates to an incident which occurred more than seven years ago where the facts were substantially different from those alleged in the present case. Defendant is correct that the evidence of this old offense would have scant probative value regarding his "knowledge [in this case] of the location of the firearm recovered from his car and its access to him," Government's Motion at 5. The evidence is in fact sheer propensity evidence. Moreover, whatever little probative value it might have is clearly outweighed by the unfair prejudice Defendant would suffer from its admission. Fed. R. Evid. 403.

20. Consequently, the Government's Motion to Admit Rule 404(b) evidence must be denied.

February 12, 2007

/s/ Gladys Kessler
Gladys Kessler
United States District Judge